## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. _____

|  |  |
|---|---|
| Jessica Row, individually, and on behalf of all others similarly situated, |  |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| MONAT GLOBAL CORP., a Florida Corporation, and ALCORA CORP., a Florida Corporation |  |
| Defendant. |  |

### INTRODUCTION

1.      Defendants Monat Global Corp. ("Monat") and Alcora Corp. ("Alcora") (collectively "Defendants") sell "specialty" hair care products under the Monat brand touted as safe, naturally-based, and designed to increase hair strength and growth. However, these representations are deceptive, misleading, unfair, and unlawful conduct because Defendants have actively concealed and failed to disclose the harmful side effects caused by its hair care products.

2.      Plaintiff and the proposed classes purchased and used Defendants' hair care products after relying on its representations about the products' safety and efficacy. However, complaints concerning Monat's products have become commonplace in the wake of its recent and rapid growth. Rather than increasing hair growth and minimizing breakage, individuals using the hair care products have reportedly suffered hair loss and scalp injury.

3.      Instead of disclosing the risk of hair loss and other injury, Defendants have intentionally concealed these risks and continues to sell its products as safe and defect-free. For

example, Monat advertises its products as "safe" and "clinically proven," and claims they provide "outstanding clinical results." It also touts its "Scientific Board" of physicians that it utilizes "to extend [its] commitment to quality, integrity, customer safety and superior product development.

4.     When customers complain about adverse side-effects of Monat's hair care products, Monat classifies this (including significant hair loss) as merely a "detox" period and leads consumers to believe that their only solution to is continued use of the products and even encourages them purchase additional products to compensate for their symptoms. When customers take to social media to air their concerns (ironically the primary channel for distribution), Monat further obfuscates and conceals the side effects by deleting posts or accusing them of being paid by competitors in the field. Such conduct has found numerous former customers and partners of Monat facing law suits for expressing these opinions.

5.     Plaintiff relied on Defendants' representations as to the safety and efficacy of its hair care products, and purchased Monat's Hydration System on November 18, 2017, and Monat's Restore Leave-In Conditioner, Smoothing Deep Conditioner, and Renew Shampoo on December 25, 2017.

6.     The active concealments and material omissions detailed herein induced the purchase of hair care products that no reasonable consumer would likely purchase, let alone pay a premium for. Every consumer who purchased Defendants' defective hair care products without the facts concerning risks and side effects having been disclosed prior to purchase were injured equally at the point of sale when, instead of obtaining the premium, safe, and natural hair care product they thought they were getting, they obtained Defendants' dangerous and defective product. Had the potential impacts of the defective hair care products designed and sold by Defendants been disclosed, reasonable consumers would not have paid the hefty premium charged for these products, or more likely, would not have purchased the products at all.

47964

7.      Plaintiff brings this action on behalf of herself and all others similarly situated, seeking damages and injunctive relief due to Defendants' deceptive conduct.

## PARTIES

8.      Defendant Monat Global Corp. is a Florida Corporation with its principal place of business in Miami, Florida. Its registered agent is CF Registered Agent, Inc., located at 100 S. Ashley Drive, Suite 400, Tampa, Florida 33602. Monat Global Corp. is a wholly owned subsidiary of Defendant Alcora Corp.

9.      Defendant Alcora Corp. is the parent company of Defendant Monat Global Corp. Alcora has its principal place of business in Miami, Florida. Its registered agent is CF Registered Agent, Inc., located at 100 S. Ashley Drive, Suite 400, Tampa, Florida 33602. Alcora launched the Monat brand through Monat in 2014. Alcora also owns L'Eudine Global, B&R Products, and Project Beauty.

10.     Plaintiff Jessica Row is, and at all times relevant hereto has been, a citizen of the state of Minnesota. Plaintiff purchased Monat's Hydration System on November 18, 2017, and Monat's Restore Leave-In Conditioner, Smoothing Deep Conditioner, and Renew Shampoo on December 25, 2017, through Monat Market Partner Amy De La Rosa. At the time of Plaintiff's purchase, based on the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendants, Plaintiff was unaware that Monat's hair care products presented a risk of hair loss or injury and did not have the quality, safety, and efficacy that Monat represented. Plaintiff would not have purchased Monat hair care products if that was fully disclosed. Plaintiff was injured by paying a premium for Monat hair care products that have no or *de minimis* value based on the risk for hair loss and injury they present.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the Class Action Fairness

47964

Act and 28 U.S.C. § 1332 because this is a class action where the parties are diverse, the amount in controversy exceeds $5,000,000 dollars exclusive of interests and costs, and the number of putative class members exceeds 100.

12.　This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

13.　This Court has personal jurisdiction over the Defendants because they are both citizens of Florida and this District.

14.　Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside in and conduct business this District, are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL ALLEGATIONS

### I.　The Monat "Mission"

15.　Monat is a direct sales company founded by Luis Urdaneta in 2014 in Miami, Florida. It is a wholly owned subsidiary of Alcora. Alcora was founded by Mr. Urdaneta and continues to be owned by him along with Ray Urdaneta. Alcora Corp. also owns the brand L'Eaudine, which is sold through direct marketing, and Project Beauty. Alcon owns and operates B&R Products, which is its product manufacturing and distribution arm.

16.　Monat claims it is one of the "fastest growing," "most admired companies," in "what experts are now calling the 'social sell' movement." Monat's Mission, as detailed on their website, www.monat.com, is to "help people everywhere enjoy healthy, fulfilling lives through our exceptional, naturally based products." Monat's Vision, as stated on their website, is "to be a global leader in naturally based, anti-aging innovation."

17.　Monat, as a direct sales company, actively recruits its customers to become direct

47964

sellers of its products, by "assembling a team of likeminded Market Partners" to sell the product in person, and ultimately obtain a portion of the team's commissions (up to 30% of the sales). Monat "Market Partners" or "MP's" utilize social media as the primary avenue of marketing Monat's products. This type of sales structure is referred to as "MLMs" or "multi-level marketers." *See*, https://monatglobal.com/why-social-marketing/ (last visited April 20, 2018).

18.     Other incentives to sell products include Monat "adventures" to cities like Maui, Orlando, and Las Vegas, where MPs enjoy "luxury and pampering as part of an all-expenses paid experience," a separate annual Leadership Summit, and the opportunity for membership in the Monat Motor Club where "driven" MPs are rewarded with a white Cadillac of their choosing.

19.     In response to the growing concern of the MLM structure, the Federal Trade Commission (the "FTC") released a guidance document entitled "Business Guidance Concerning Multi-Level     Marketing"     available     at:     https://www.ftc.gov/tips-advice/business-center/guidance/business-guidance-concerning-multi-level-marketing.     The     FTC     cautions consumers that "[a]n MLM compensation structure that incentivizes participants to buy product, and to recruit additional participants to buy product, to advance in the marketing program rather than in response to consumer demand in the marketplace, poses particular risks of injury." "In such circumstances, participants will often attempt to recruit new participants who will buy product, and pressure existing recruits to buy product, with little concern for consumer demand."

## II.     Monat's Hair Care Products

20.     At the time of its founding in 2014, Luis Urdaneta stated, "we feel it is our responsibility to offer products that meet only the highest quality standards and are made only with safe ingredients." Monat continues to represent the safety and efficacy of its products.

21.     Monat currently markets a number of hair care products that range in price from $35 for a shampoo, to $99 for the Rejuveniqe serum. There are also several different "systems"

consisting of a shampoo, conditioner, and usually an additional product that one can purchase for $99.

22.     Monat's Rejuvenique Oil is marketed as "so pure and versatile that it can be used in multiple ways to improve skin and hair." It touts its benefits as hair that "looks instantly healthier."

23.     The Hydration System "[p]rovides brilliance, strength and vitality to lackluster strands" and includes a shampoo, leave-in conditioner, and a hydrating masque. It's tag-line in Monat's advertising is "Help get it back to good."

24.     The Volume System is "[f]or density, strength and manageability," and includes a shampoo, conditioner, and root lifter. Monat emphasizes its "clinically proven ingredients" that have resulted in outcomes including "increased manageability and shine" and "decrease in fiber breakage."

25.     The Stylized System "[c]reates consistent and lasting hold… while supporting the natural regrowth of hair," and includes "sculpting taffy," "texturizing mist," and a hairspray. It purports to "support[] the natural regrowth of [] hair."

26.     Finally, the Power Boost system "[b]oosts the natural growth of the hair from the inside out while reducing hair thinning," and includes a Supplement Support System (S3) and an intense repair treatment.

27.     Monat also offers a variety of other products and "systems," including those specifically for children and men.

28.     Monat represents that each of its products is free from "toxic ingredients" and that its ingredients are "naturally-based, safe, pure and sustainable."

29.     Monat advertises the success of these products through before and after testimonials on its website with photos of individuals. For example, one user says "I am so in love with this oil after only one use!" Another says "Rejuveniqe is the most luxe hair oil I have ever tried. It has

every type of oil you could wish for, and feels like liquid gold." Another user says, "I am here to tell you that my hair is the best it has ever been!" *See* https://monatglobal.com/results-2/ (last visited April 20, 2018).

### III.    The Science of Monat

30.     The "Science of Monat" page of Monat's website describes the ingredients of Monat's products as "naturally-based, safe, pure and sustainable." *See*, https://monatglobal.com/the-science-of-monat/ (last visited April 20, 2018). The name Monat stands for "Modern Nature," emphasizing the natural-based focus of the products created by Monat.

31.     Through a "proprietary blend of 11+ unique molecular ingredients," Monat touts its products "suitable for all skin and hair types" that "energize and rehabilitate the scalp to visibly repair hair with instant and long-term Age Prevention benefits." *See*, https://monatglobal.com/the-science-of-monat/ (last visited April 20, 2018). Monat bolsters these claims with a photograph of a scientist in a lab coat reviewing slides under a microscope to create the perception of support through valid scientific research, but the source of these claims is notably absent from the webpage.

32.     On the same page, Monat emphasizes that it says "no to toxic ingredients," and that its products are made "without harmful chemicals" as a major selling point distinguishing it from other hair care products. Specifically, Monat provides a list "of what you won't – and will never find in any MONAT product:

-   No parabens
-   No sulfates
-   No DEA/MEA
-   No phthalates
-   No PEG
-   No phenoxyethanol
-   No ethanol

-   No petrochemicals
-   No formaldehyde releasers
-   No gluten
-   No harmful colors
-   No harmful fragrances
-   No animal origin

33.     Trademarked components of Monat's hair care products include Capixyl with red

47964

clover extract providing "outstanding clinical results provide significant decrease in hair loss effect and increase in hair regrowth;" Procataline which "reduces the production of the (DHT) hormone that contributes to hair loss;" and Crodasorb, which "packs an intense defense against oxidative stress [and] protects from the sun's damaging rays and resultant UBV damage." *See*, https://monatglobal.com/the-science-of-monat/ (last visited April 20, 2018).

34.    However, despite Monat's representations, the full list of ingredients in hair care products are extensive and unable to be deciphered by the average consumer:

> Water (Aqua), Lauramidopropyl Betaine, Sodium C14-16 Olefin Sulfonate, Acrylates Copolymer, Sodium Methyl Cocoyl Taurate, Sodium Cocoamphoacetate, Guar Hydroxypropyltrimonium Chloride, Cinnamidopropyltrimonium Chloride, Stearyldimoniumhydroxypropyl Decylglucosides Chloride, Polyquaternium-11, Pisum Sativum (Pea) Extract, Acetyl Tetrapeptide-3, Trifolium Pratense (Clover) Flower Extract, Limnanthes Alba (Meadowfoam) Seed Oil, Crambe Abyssinica Seed Oil, Camellia Oleifera Seed Oil, Solanum Lycopersicum (Tomato) Seed Oil, Daucus Carota Sativa (Carrot) Seed Oil, Citrus Limon (Lemon) Peel Oil, Citrus Aurantifolia (Lime) Oil, Citrus Aurantium Bergamia (Bergamot) Fruit Oil, Adansonia Digitata Oil, Mauritia Flexuosa Fruit Oil, Cocos Nucifera (Coconut) Oil, Gardenia Tahitensis Flower Extract, Moringa Oleifera Seed Oil, Caryocar Brasiliense Fruit Oil, Helianthus Annuus (Sunflower) Seed Oil, Glycerin, Tocopherol, Dextran, Citric Acid, Propanediol, Glycol Distearate, Cocamidopropyl Hydroxysultaine, Sodium Hydroxypropylphosphate Decylglucoside Crosspolymer, Lauramide MIPA,Sodium Hydroxypropylphosphate Laurylglucoside Crosspolymer, Cocamidopropyl Betaine, Butylene Glycol, Propoxytetramethyl Piperdinyl Dimethicone, Trideceth-6, Centrimonium Chloride, Aminomethyl Propanol, Fragrance (Parfum), C11-15 Pareth-7, Phenethyl Alcohol, Undecyl Alcohol, Benzyl Alcohol.

*See, e.g.*, Monat Ingredients Listing, Smoothing Shampoo, https://monatglobal.com/us/revive-shampoo/ (last visited April 20, 2018).

35.    Several of these ingredients are known allergens, irritants, or otherwise harmful to humans including Cocamidopropyl Betaine, Benzyl Alcohol, Red Clover Leaf Extract, and Trideceth-6 C11-15 Pareth-7. For example, in 2004, the American Contact Dermatitis Society named Cocamidopropyl Betaine the allergen of the year. *See*, https://www.contactderm.org/i4a/pages/index.cfm?pageID=3467 (last visited April 20, 2018).

36.    Despite these harsh chemicals, Monat claims the following with respect to its

47964

"clinically proven ingredients" and "demonstrated outcomes:"

- 88% Increase shine and manageability
- 76% Increase in collagen directly increasing follicle size
- 70% Increase in repair effect improving hair anchoring
- 58% Noticed a decrease in fiber breakage

- 48% Decrease in DHT hormone that contributes to hair loss
- 46% Increase in hair growth

- 35% Increase in hair follicle strength

*See, e.g.*, https://monatglobal.com/hydration-system/ (last visited April 20, 2018).

37.     Coupled with the aforementioned "outstanding results" showing increase in hair growth, decrease in hair loss, and its suitability to all hair and skin types, consumers are deceived into thinking the defective hair care products are safe and effective. These statements are materially false and misleading because of the known side-effect of the ingredients in Monat's defective hair care products, and the products themselves, that frequently leads to hair loss, thinning, and skin disorders.

## IV. Consumer Complaints About Monat's Hair Care Products

38.     As evidenced by various websites, blog posts, and forums, as detailed below, the result of Defendants' defective hair care products is anything but "safe" and "outstanding."

39.     On September 26, 2016, the Better Business Bureau ("BBB") sent correspondence requesting voluntary cooperation in providing steps to eliminate the pattern of customer complaints it received. *See*, https://www.bbb.org/south-east-florida/pages/business-reviews/skin-care/monat-global-in-doral-fl-90137286/reviews-and-complaints?noskin&cle%E2%80%A6 (last visited April 20, 2018). As of April 2018, the BBB had received 571 complaints, the majority of which related to "problems with product/service."

40.     For example, on April 16, 2018, one customer complained they "experienced extreme hair loss and breakage by using Monat" and that Monat would "not provide a refund after

providing this information."

41.     On April 13, 2018, a customer complained, "After using this product for 3 weeks my hair began breaking and falling out. The reason I began using the product is it touts hair growth… I discontinued using and began calling and emailing the company to request instructions on how to return all the products," but was unable to "reach customer service."

42.     On April 13, 2017, another consumer wrote, "I purchased hair treatment that was supposed to thicken my hair. Instead, it has made my hair fall out. I am now going bald… After two months of use, my hair began to fall out." The consumer stated that her doctor told her to stop using the Monat products. The complaint also says that Monat "mislead[s] customers."

43.     On March 16, 2018, a consumer posted that "My hair [] has broken off, dry like straw. Scalp sore (I have pictures to prove)".

44.     On March 9, 2018, a consumer posted, "Hair products caused hair to dry out and break. Also it caused severe acne on my face. Spent $450 on product. They have an autoship program where they sent product earlier than scheduled and charge my credit card. Bought the product around the first of Dec and returned around 1st of January. We have not received our refund even though we complied with what they asked. We called for an RA number and shipped ALL the product back to them. The CS dept is very hard to get a hold of put you on hold for hours."

45.     On February 28, 2018, a consumer complaint stated, "Product ruined my hair Used this product for 6 months. Initially it made my hair break off on the ends and I was told it was too much protein so I was advised to stop using the masque twice a week. When it continues to get worse I was told it was because I wasn't using monat oil so I was advised to buy some... which cost me another $100. After 4 months all my hair started falling out. I was told I was using it wrong, I has [sic] thyroid problems, and I am getting bald spots because I had a baby. I'm a registered nurse. This is my 3rd kid. I know how to shampoo my hair. I am also a brunette who

hardly fixes my hair. This company is a scam. It made my hair worse so I had to purchase more products. It also caused my scalp to dry out so bad I had embarrassing flakes. When I tried to cancel my VIP autoship nobody would answer their phones or emails so I had to cancel my debit card. Scam!"

46.     In December 2017, a group of consumers formed a Facebook group called "Monat – My Modern Nightmare." The thousands of members have commented about similar experiences after using Monat's hair care products. *See,* McNeal, S., "Monat is Suing a Woman Who Said Their Products are a 'Nightmare;" BuzzFeed News (Feb. 7, 2018 1:34PM), *available at:* https://www.buzzfeed.com/stephaniemcneal/monat?utm_term=ilWbmOE4KX#.krp6nDoZa4 (last visited April 20, 2018). According to BuzzFeed News, the group had over 12,000 members as of the publishing of the article.

47.     A website for an independent hairdresser, Hartline Hair (https://www.hartlinehair.com/single-post/Monat), claims that Monat representatives have failed to warn individuals, including cancer patients experiencing hair loss resulting from chemotherapy treatment, about the presence of a significant allergen, Cocamidopropl Betaine contained in their products. If a Monat client has a reaction (including the more vulnerable cancer patients), those individuals are advised to "push through" and continuing using a product that may be causing painful and serious consequences to their health and well-being. Comments on this post claim Monat products have "caused my hair to fall out in massive amounts," "it made my scalp itchy and I developed a few sores." (last visited April 20, 2018). On March 28, Lea Hartline, the website's creator, posted that one of Monat's Market Partners told her that her website was "filled with false statements" *Id.*

48.     Trustpilot.com, an online review community, has posted over 150 reviews of Monat products, many of which contain similar claims. *See*

https://www.trustpilot.com/review/monatglobal.com?languages=en&stars=1  (last visited April 20, 2018).

49.     On April 6, 2018, a consumer posted, "had long, beautiful, thick, healthy hair. This product destroyed my hair. It was like straw - breakage and extraordinarily dry. I now have a super short pixie cut. I had to cut about 18 inches of hair off. I was told to stick with it...buy "this" product to help...i [sic] used for 6 Months. After a clarifying shampoo from salon, there was a ring in My sink - felt like wax, tbh. My daughter (9yrs old) had to have all her hair cutoff as well - using kids line- super dry and frizzy. I emailed customer service at the end of January and have yet to hear back (it's April). Apparently only the happy customers are acknowledged. I spent about $500 on their product and likely another $1000 trying to repair. Please...buy salon products from your stylist - if it was as good as it is made out to be, the product would be 100% satisfaction guaranteed."

50.     On April 16, 2018, a consumer posted, "Do you want to know how bad this company is? Groups on Facebook that belong to local Monat groups are ENCOURAGED to leave good reviews on this website to stop the true bad reviews. Let that sink in......"

51.     Monat customer Andrea Worley posted a video on her YouTube with her "honest" review after five months on November 12, 2017. *See* https://www.youtube.com/watch?v=7Rs8ckMvG0g. In the video, she described the tangling, breaking, and hair loss that her MP assured her was simply the detox period. After sticking out the "detox" period, her MP sold her various other products to treat additional issues including the "Renew" shampoo and the "Restore" leave in conditioner to help strengthen her dry hair, and dry shampoo to correct her now oily scalp. After sixty days with Monat, Worley still experienced dryness, tangles, clumps of hair loss, and significantly oily scalp, which her MP continued to attribute to "detox" and recommend additional products. She said: "It honestly made me so

47964

bummed and so sad because I feel like Monat is not doing the things that I thought that it was going to do after so many months of using this hair care system" and she did not see the results "that were claimed to be seen through these products." After attempting to cancel her VIP status, her MP would not let her cancel without paying a $52 fee (because she had not yet placed a third order) to compensate for free shipping and the discount she received as a VIP member. (last visited April 20, 2018).

52.     YouTube is replete with video journals like Worley's. *See, e.g.*, Leah Jackson aka "Junk Free Momma," May 24, 2017 (https://www.youtube.com/watch?v=L0EQfOTxOEQ) ("hair still falling out by the handfuls" after the 90-day "detox" period) (last visited April 20, 2018); Tiffany M aka "Bodiedbyt," Aug. 3, 2017 (https://www.youtube.com/watch?v=clBx2YZq2eg) (former MP for Monat says "hair feels worse than it ever has," "my hair was falling out," "my hair is thinner than it was) (last visited April 20, 2018); Destinee Irons, Nov. 11, 2018 (https://www.youtube.com/watch?v=zRVRfnWWTo0) (last visited April 20, 2018) (eight month Monat review, "Detox is still present after 8 months!"); Heather and Holly aka "Smart Mouth Beauty," July 21, 2017 (https://www.youtube.com/watch?v=LklafS293Q4) ("my hair fell out in clumps," "my hair is so thin… such a difference from my normal," "scalp feels tight and sensitive," "I've been very upset.") (last visited April 20, 2018).

53.     Despite the plethora of information available on the internet complaining of and discouraging the use of Monat's hair care products, upon information and belief Monat has exacerbated the deception and concealed the defects from the unsuspecting public by actively concealing customer's comments concerning hair loss by blocking or deleting them, and filing lawsuits against individuals who made public statements concerning the damage resulting from the defective hair care products. *See, e.g., Monat Global Corp. v. Harrington*, No. 4:18-cv-00008-D (E.D.N.C. Jan. 26, 2018); *Monat Global Corp. v. Miller*, No. 2:18-cv-00324-APG-GWF (D.

47964

Nev. Feb. 21, 2018); *Monat Global Corp. v. Baker*, No. 2:18-cv-10579-AJT-DRG (E.D. Mich. Feb. 19, 2018).

54.     Indeed, one lawsuit involves a former Monat customer and MP who sought a refund for over $900 in products after publicly reporting that the products are dangerous to women who are pregnant or breastfeeding and that her customers experienced balding, hair loss, and scalp burns after using Monat's products. *Monat Global Corp. v. Harrington*, No. 4:18-cv-00008-D (E.D.N.C. Jan. 26, 2018). The complaints were detailed in the "Monat-My Modern Nightmare" Facebook group featured in the BuzzFeed News article, ¶37, *supra*. In its complaint, Monat of course claims that all representations by their former MP were false and lacked a scientific or factual basis.

55.     In other situations where a consumer complains, Monat and its MPs lead the consumer into believing that they are experiencing an expected "detox" phase, and encourage them to continue using the product to achieve better results. Monat fails to disclose that these side-effects can cause permanent damage to skin and hair follicles even as customers are experiencing the injuries complained of herein.

**V.     Plaintiff's Experience With Monat Hair Care Products**

56.     Plaintiff was sold Monat hair care products by Monat Market Partner, Amy De La Rosa. Ms. De La Rosa offered Plaintiff a sample Monat product to try. The first sample Plaintiff tried made her hair very dry, so Ms. De La Rose offered Plaintiff a second sample. Plaintiff was happy with the results from this second sample, and therefore made her first purchase of Monat on November 18, 2017, buying the Hydration System through Ms. De La Rosa for $84.  Plaintiff purchased these based on Monat's advertising and representations about the quality, safety, and efficacy of its products, including that they were "safe" and "clinically proven," and provide "outstanding clinical results."

57.     On December 25, 2017, Plaintiff joined Monat's VIP level customer program for $19.99 in order to receive Monat products at a discounted price as well as some free Monat products. On December 25, 2017, Plaintiff purchased Monat's Restore Leave-In Conditioner for $28, Smoothing Deep Conditioner for $40, and Renew Shampoo for $20 through Ms. De La Rosa. Because she signed up for the VIP program, Plaintiff also received a sample of Monat's Rejuvabeads and OFY Clarifying Shampoo. Plaintiff purchased these based on Monat's advertising and representations about the quality, safety, and efficacy of its products, including that they were "safe" and "clinically proven," and provide "outstanding clinical results."

58.     Plaintiff used Monat hair care products from late-November 2017 until the end of January 2018. When she first started using the Monat hair care products, Plaintiff thought her hair seemed softer. However, Plaintiff then began to experience significant hair loss and lose large clumps of hair each time she brushed. Plaintiff also began to experience eczema on her scalp. Plaintiff's hair stylist expressed concern about the amount of hair she was losing, and a friend of Plaintiff's who is a hair stylist told her to stop using the Monat products.

59.     Plaintiff told Ms. De La Rosa about her hair loss and dry scalp. Ms. De La Rosa told Plaintiff that hair loss was part of Monat's hair cleanse and that she should expect to lose hair for 4-8 weeks. Ms. De La Rosa recommended that Plaintiff purchase a Monat hair oil priced at $80 per bottle, which Plaintiff declined. Ms. De La Rosa then sent Plaintiff Monat's children's hair care line, which she said was less harsh. Plaintiff used the Monat children's hair care products for approximately one week, but did not see any improvement to her hair loss or dry scalp.

60.     Plaintiff stopped using Monat hair care products in late January 2018 because of the negative affects she experienced, including hair loss and dry scalp. Plaintiff contacted Monat directly to lodge a complaint about Monat's hair care products and seek a refund. Each time Plaintiff called Monat's customer service, her wait time was over 45 minutes. Monat told Plaintiff

that a management-level individual would return her call, but Plaintiff was never contacted.

61.     Plaintiff was able to return her December 25, 2017, order and receive a full refund under Monat's 30-day return policy. Monat also informed Plaintiff that she could return unused product from her November 18, 2017, order, but then refused to refund Plaintiff's money. Plaintiff requested to speak with a supervisor but was never contacted. She was informed by Monat that her case was closed and has attempted to reopen a claim without any response from Monat.

62.     Defendants knowingly and intentionally committed the acts, concealments and material omissions alleged herein. All acts and omissions by Defendants were willful and not the result of mistake or inadvertence. At all relevant times, Defendants were aware of the defective nature of the Monat hair care products. Despite this knowledge, Defendants designed, marketed, and sold as fit for their intended purpose, Monat's hair care products. Defendants further concealed the true nature of its hair care products by actively touting the scientific and "proven" benefits, and diverted reasonable consumers from discovering the truth by either (1) convincing consumers that resulting injury was a natural and expected consequence of the product and continued use would eventually cure their ailments, or (2) deleting or removing claims of inefficacy and injury from the internet and initiating litigation against individuals that attempt to warn consumers against using these products

63.     Had Plaintiff and the Classes been aware of this information prior to purchasing Monat's hair care products, they would not have purchased them at all, or, at the very least, would not have paid as much as they did. At a minimum, Plaintiff and the Classes would have been able to make informed purchasing decisions had they known the true risk of injury and hair loss inherent in Monat's hair care products. This information was material to reasonable consumers like Plaintiff, and particularly important to the consumers targeted by Monat who are already unhappy with their hair thickness and health.

47964

## CLASS ACTION ALLEGATIONS

64.     Pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and as the following classes:

> All persons who, within the Class Period, purchased one or more hair care products sold by Monat Global Corp. in the United States (the "Class").

> All persons from the State of Minnesota who, within the Class Period, purchased one or more hair care products sold by Monat Global Corp. (the "Minnesota Subclass").

65.     The "Class Period" for the Classes dates back to the length of the longest applicable statute of limitations for any claims asserted on behalf of that Classes from the date this action was commenced and continues through the present and the date of judgment.

66.     Excluded from the Classes are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; the undersigned counsel for Plaintiff and its employees; and the judge and court staff to whom this case is assigned. Plaintiff reserves the right to amend the definition of the Classes and Class Period if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

67.     All requirements for class certification in Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied with respect to the class. Alternatively, class certification under Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2) is proper.

68.     *Numerosity of the Classes*: The Classes are so numerous that the individual joinder of all members is impractical under the circumstances of this case.

69.     *Ascertainability*: The community of interest among these Class members in the litigation is well defined and the proposed classes are ascertainable from objective criteria. If necessary to preserve the case as a class action, the court itself can redefine the Classes and/or create sub-classes.

70.     ***Commonality and Predominance***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions that affect only individual members of the Class. Plaintiff and the proposes Classes suffered damage as a result of the defective hair care products and individual questions are minimal. The common questions of law and fact include, but are not limited to:

    a.   Whether Defendants misrepresented the true quality, safety and efficacy of Monat hair care products;

    b.   Whether Defendants' Monat hair care products have the advertised level of quality, safety, and efficacy;

    c.   Whether Defendants had knowledge of the defect in Monat hair care products;

    d.   Whether Defendants concealed the defect in Monat hair care products;

    e.   Whether the defect was a material fact which Defendants had a duty to disclose to Plaintiff and the Classes;

    f.   Whether Plaintiff and the Classes suffered damage from their purchases of Defendants defective Monat hair care products;

    g.   Whether Defendants breached the implied warranty of merchantability or other warranties related to its defective hair care products;

    h.   Whether Plaintiff and the Classes are entitled to damages, restitution, restitutionary disgorgement, equitable relief, or other relief; and

    i.   The amount and nature of such relief to be awarded to Plaintiff and the Classes.

71.     Plaintiff and the Classes suffered the same type of damage from Defendants' defective hair care products. Plaintiff and the Classes also suffered the same type of harm and were damaged from the same course of conduct by Defendants.

72.     The claims of Plaintiff and the Classes can be resolved under common legal theories

47964

because Defendants committed the deceptive acts in and from its principal offices in Florida and those misleading practices emanated to Class members in other states causing injury and financial loss. Similarly, the claims of the Minnesota Subclass can be resolved under a common legal theory pursuant to Minnesota law.

73.    *Typicality*: Plaintiff's claims are typical of the claims of members of the Classes. Plaintiff and the members of the Classes purchased Defendants' defective Monat hair care products with the same expectation that the products were defect-free and safe to use for their intended purpose. Plaintiff and members of the Classes have all sustained injury in that they lost the benefit of their bargain and overpaid for a product that contains the defects described above.

74.    *Adequacy*: Plaintiff and the undersigned counsel will fairly and adequately protect the interests of members of the Classes. Plaintiff has no interests that are adverse to the interests of the other members of the Classes and has hired counsel experienced in class actions, complex litigation, and trial practice.

75.    *Superiority*: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the Classes is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost and burden on the court system of adjudication of individualized litigation would be substantial, and significantly more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

47964

76.     ***Predominance/Community of Interest***. The proposed Classes have a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact predominate with respect to the liability issues, relief issues, and anticipated affirmative defenses. The named Plaintiff has claims typical of the Classes. Without limitation, as a result of Defendants' conduct alleged herein, Plaintiff was: (a) injured; and (b) sustained pecuniary loss in an ascertainable amount to be proven at the time of trial.

77.     In the alternative, the above-defined Class may be certified pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2) because:

   a.   The prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendants;

   b.   The prosecution of separate actions by individual members of the Classes would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Classes who are not parties to the adjudications, or which would substantially impair or impede the ability of other class members to protect their interests; and

   c.   Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the Classes.

## CAUSES OF ACTION

### COUNT I
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. §2301, *et seq.*
### (against Defendants on behalf of Plaintiff and the Classes)

78.     Plaintiff realleges and incorporate the allegations contained in each of the preceding

paragraphs herein and further allege as follows:

79.     The Magnuson-Moss Warranty Act provides a private right of action by purchasers of consumer products against manufacturers or retailers who, among other things, fail to comply with the terms of the written, express, or implied warranties. See 15 U.S.C. § 2310(d)(1).

80.     As alleged herein, Defendants failed to comply with the terms of its written, express, or implied warranties.

81.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332.

82.     Plaintiff and the Class members are "consumers" as defined by the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(3).

83.     Monat is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

84.     The Monat hair care products at issue in this case are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(a).

85.     As described herein, and more full set forth in Counts II and III of this Complaint, Defendants have breached their warranties by failing to honor its written promises and representations and failing to deliver a merchantable product that is fit for its intended use.

86.     Plaintiff and Class members have had sufficient direct dealings with either Monat or its MPs to establish privity of contract.

87.     Monat and/or its agents were on notice of the problems and provided an opportunity to cure due to the plethora of complaints received, without such concerns being resolved.

88.     The futility of any notice is underscored by the multiple lawsuits Defendants have filed against consumer based on their allegations regarding the defective nature of these products. *See, e.g.*, *Monat Global Corp.  v. Harrington*, No. 4:18-cv-00008-D (E.D.N.C. Jan. 26, 2018);

47964

*Monat Global Corp. v. Miller*, No. 2:18-cv-00324-APG-GWF (D. Nev. Feb. 21, 2018); *Monat Global Corp. v. Baker*, No. 2:18-cv-10579-AJT-DRG (E.D. Mich. Feb. 19, 2018).

89.    Any attempt to disclaim warranties under the circumstances is unconscionable and unenforceable.

90.    Defendants' acts and omissions in violation of the Magnuson Moss Warranty Act are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

91.    The amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit. For each Class member the amount in controversy at least exceeds the sum of $35, exclusive of interest and costs, which is the minimum difference in value between what Plaintiff bargained for (a safe, defect- free hair care product) and what Plaintiff received (a valueless product that can cause substantial irritation and injury).

92.    Plaintiff seeks all damages in an amount they will prove at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and Class members seek a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and Class members in connection with the commencement and prosecution of this Action.

**COUNT II**
**Breach of Implied Warranty**
**(against Defendants on behalf of Plaintiff and the Classes)**

93.    Plaintiff realleges and incorporate the allegations contained in each of the preceding paragraphs herein and further allege as follows:

94.    At all times relevant herein, Defendants were merchants with respect to the

47964

defective hair care products as described in this Complaint.

95.     The defective Monat hair care products sold to Plaintiff and members of the Classes are goods as defined by relevant statutes.

96.     Defendants' Monat hair care products include an implied warranty that they are merchantable in that they are, *inter alia*, fit for the ordinary purpose for which such goods are used. Defendant represents that its hair care products are "safe," "clinically proven," free from "toxic ingredients," that its ingredients are "naturally-based, safe, pure and sustainable," and that they produce "outstanding" results.

97.     The defective Monat hair care products at issue in this case are not in merchantable condition or fit for the ordinary purpose for which such goods are used in that rather than cleaning and conditioning hair, they cause skin irritation, injury, and hair loss, among other damage.

98.     At all times relevant herein, Defendants were aware of the defect in the defective hair care products. Specifically, Defendants and/or its agents were on notice of the problems and provided an opportunity to cure due to the plethora of complaints received, without such concerns being resolved.

99.     Plaintiff and members of the Classes were in direct privity with Defendants and/or its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

100.     Plaintiff and the Classes were harmed by Defendants' omissions and misrepresentations when they purchased the defective hair care products.

101.     Had Defendants disclosed the true nature of the defect in its Monat hair care products, Plaintiff and members of the Classes would not have purchased Monat's hair care products.

102.     Plaintiff and members of the Classes have suffered a loss by paying more than they

would have otherwise paid for the defective hair care products and by receiving hair care products of inferior value than what they were promised by Defendants.

103.   As a direct and proximate result of Defendants' breaches, Plaintiff and members of the Classes have suffered, and will continue to suffer, significant damages, loss, and injury in an amount to be determined at trial.

104.   Plaintiff and members of the Classes are entitled to legal and equitable relief against Monat, including actual and consequential damages, rescission, attorneys' fees, costs of suit, and other relief as deemed appropriate.

**COUNT III**
**Breach of Express Warranty**
**(against Defendants on behalf of Plaintiff and the Classes)**

105.   Plaintiff realleges and incorporate the allegations contained in each of the preceding paragraphs herein and further allege as follows:

106.   As described herein, Defendants placed labels on its defective hair care products and made statements in its marketing materials with the intention that consumers would rely on those misrepresentations and purchase the product from Defendants. Specifically, Defendants warranted that Monat's hair care products are "safe," "clinically proven," free from "toxic ingredients," that its ingredients are "naturally-based, safe, pure and sustainable," and that they produce "outstanding" results.

107.   At all times relevant herein, Defendants were aware of the defect in the defective hair care products. Specifically, Defendants and/or its agents were on notice of the problems and provided an opportunity to cure due to the plethora of complaints received, without such concerns being resolved.

108.   Defendants' false and misleading statements related to quality and safety became a basis of the bargain, and Plaintiff and members of the Classes expected that the Monat hair care

47964

products that they purchased would conform to Defendants' affirmations.

109.     Plaintiff and members of the Classes were in direct privity with Defendants and/or its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

110.     Plaintiff and the Classes were harmed by Defendants' omissions and misrepresentations when they purchased the defective hair care products.

111.     Had Defendants disclosed the true nature of the defect in its Monat hair care products, Plaintiff and members of the Classes would not have purchased the Monat hair care products.

112.     Plaintiff and members of the Classes have suffered a loss by paying more than they would have otherwise paid for the defective Monat hair care products and by receiving hair care products of inferior value than what they were promised by Defendants.

113.     As a direct and proximate result of Defendants' breaches, Plaintiff and members of the Classes have suffered, and will continue to suffer, significant damages, loss, and injury in an amount to be determined at trial.

114.     Plaintiff and members of the Classes are entitled to legal and equitable relief against Defendants, including actual and consequential damages, rescission, attorneys' fees, costs of suit, and other relief as deemed appropriate.

**COUNT IV**
**Violations of Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201, *et seq.***
**(against Defendants on behalf of Plaintiff and the Classes)**

115.     Plaintiff realleges and incorporate the allegations contained in each of the preceding paragraphs herein and further allege as follows:

116.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

117.    Plaintiff and the Classes are "consumers" as defined by Fla. Stat. 501.203(7).

118.    Defendants engaged in unfair or deceptive acts in the conduct of its trade or commerce emanating and transpiring entirely from within the State of Florida by concealing and failing to disclose material facts about the defective hair care products at issue in this case, with the intent that consumer rely upon its omissions and concealment. Monat represented that its hair care products are "safe," "clinically proven," free from "toxic ingredients," that its ingredients are "naturally-based, safe, pure and sustainable," and that they produce "outstanding" results.

119.    Specifically, Monat placed is defective products into the stream of commerce from Florida knowing that they were unsuitable for hair care and could cause significant injury to consumers including, but not limited to, scalp irritation and hair loss.

120.    Monat concealed such material facts from the Classes in a common manner.

121.    These unfair and deceptive acts and practices were likely to, and did in fact, deceive reasonable consumers including Plaintiff and the Classes, as to the safety, functionality, quality, and true value of the defective hair care products at issue in this case.

122.    The determination of whether a concealed fact is material is an objective determination capable of resolution on a class wide basis.

123.    Plaintiff and the Classes have sustained actual damages as a direct and proximate result of Defendant's unfair, deceptive, and unconscionable acts and practices. Neither Plaintiff nor the Classes would have purchased the defective hair care products at issue in this case had they known about the defect such that they have not received the benefit of their bargains.

124.    Section 501.211(2) of the Florida Statutes provides Plaintiffs with a private right of action against Defendants and entitles them to recover their actual damages, plus attorneys' fees and costs.

47964

125.     Plaintiff and the Classes are entitled to judgment against Defendants for compensatory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, restitution, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

**COUNT V**
**Unjust Enrichment**
**(against Defendants on behalf of Plaintiff and the Classes)**

126.     Plaintiff realleges and incorporate the allegations contained in each of the preceding paragraphs herein and further allege as follows:

127.     Plaintiffs bring this claim on behalf of the Classes as an alternative to the claims for breach of warranty (Counts I-III).

128.     As alleged above, Defendants' unlawful, unfair, deceptive, and wrongful acts and omissions, unjust enriched Defendants at the expense of Plaintiff and the Classes. Plaintiffs and the Class paid a premium for hair care products which were unfit for their ordinary use.

129.     Plaintiff and the Class members conferred a benefit on Defendants through payment for the defective hair care products.

130.     Defendants' retention of the benefit conferred as a result of its unlawful acts was inequitable and unjust.

131.     Plaintiff and members of the Classes have no adequate remedy at law.

132.     Plaintiff and members of the Classes are entitled to seek restitution and other relief from Monat, including an order requiring Defendant to disgorge all profits, benefits, and other compensation obtained by Defendant through and for its wrongful conduct.

**COUNT VI**
**Violation of Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13, *et seq.***
**(against Defendants on behalf of the Minnesota Subclass)**

133.     Plaintiff realleges and incorporate the allegations contained in each of the preceding

paragraphs herein and further allege as follows:

134.    Defendants are "persons" within the meaning of the Minnesota Unlawful Trade Practices Act (MUTPA).

135.    Defendants violated the MUTPA by knowingly misrepresenting the safety and quality of its hair care products by falsely claiming, in product advertising on its website and on the products themselves, that its hair care products are "safe," "clinically proven," free from "toxic ingredients," that its ingredients are "naturally-based, safe, pure and sustainable," and that they produce "outstanding" results.

136.    Defendants knew or should have known that Monat's hair care products do not have the quality, safety, or results described above.

137.    Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Subclass with respect to the quality, safety, and efficacy of Monat's hair care products.

138.    Defendants intended that Plaintiff and the Minnesota subclass would rely on Defendants' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding its hair care products' quality, safety, and efficacy.

139.    Defendants' conduct and omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

140.    The facts concealed or not disclosed by Defendants were material facts in that Plaintiff and any reasonable consumer would have considered them in deciding whether to purchase Monat hair care products.  Had Plaintiff known Monat's hair care products did not have the quality, safety, and efficacy advertised by Defendants, she would not have purchased the products.

47964

141.    Defendants intended that Plaintiff and the Minnesota Subclass would rely on the deception by purchasing Monat hair care products, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

142.    Defendants' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

143.    As a result of Defendants' conduct, Plaintiff and the Minnesota Subclass have suffered actual damages in that they purchased Monat hair care products that are worth less than the price they paid and that they would not have purchased at all had they known of the potential risk associated with their use.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiff and the Minnesota Subclass.

144.    As a direct and proximate result of Defendants' violations of the MUTPA, Plaintiff and the Minnesota Subclass have been injured, and that harm will continue unless Defendants are enjoined from misrepresenting the quality, safety, and efficacy of Monat's hair care products described herein.

145.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUTPA.


**COUNT VII**
**Violation of Minnesota Uniform Deceptive Trade Practices Act,**
**Minn. Stat. § 325D.43, *et seq.***
**(against Defendants on behalf of Plaintiff and the Minnesota Subclass)**


146.    Plaintiff realleges and incorporate the allegations contained in each of the preceding paragraphs herein and further allege as follows:

147.    Defendants is "persons" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

47964

148.   Defendants willingly engaged in deceptive trade practices, in violation of the MUDTPA, by representing, in product advertising on its website and on the products themselves, that its hair care products have characteristics and benefits that they do not have, including that they are "safe," "clinically proven," free from "toxic ingredients," that its ingredients are "naturally-based, safe, pure and sustainable," and that they produce "outstanding" results.

149.   Defendants knew or should have known that its hair care products do not have the quality, safety, or results described above.

150.   Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Subclass with respect to the quality, safety, and efficacy of Monat's hair care products.

151.   Defendants intended that Plaintiff and the Minnesota Subclass would rely on Defendants' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding Monat's hair care products' quality, safety, and efficacy.

152.   Defendants' conduct and omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

153.   The facts concealed or not disclosed by Defendants were material facts in that Plaintiff and any reasonable consumer would have considered them in deciding whether to purchase Monat's hair care products.  Had Plaintiff known Monat's hair care products did not have the quality, safety, and efficacy advertised by Defendants, she would not have purchased the products.

154.   Defendants intended that Plaintiff and the Minnesota Subclass would rely on the deception by purchasing Monat's hair care products, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

155.    Defendants' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

156.    As a result of Defendants' conduct, Plaintiff and the Minnesota Subclass have suffered actual damages in that they purchased Monat hair care products that are worth less than the price they paid and that they would not have purchased at all had they known of the potential risk associated with their use.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiff and the Minnesota Subclass.

157.    As a direct and proximate result of Defendants' violations of the MUDTPA, Plaintiff and the Minnesota Subclass have been injured, and that harm will continue unless Defendants are enjoined from misrepresenting the quality, safety, and efficacy of its hair care products described herein.

158.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

**COUNT VIII**
**Violation of Minnesota False Statement in Advertising Act,**
**Minn. Stat. § 325F.67, *et seq.***
**(against Defendants on behalf of Plaintiff and the Minnesota Subclass)**

159.    Plaintiff realleges and incorporate the allegations contained in each of the preceding paragraphs herein and further allege as follows:

160.    Plaintiff purchased "goods", specifically the Monat hair care products discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act (FSAA).

161.    Plaintiff purchased the Monat hair care products that are advertised using numerous material assertions representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Defendants that are untrue, deceptive, and misleading.

162.    By engaging in the conduct described herein, Defendants violated and continue to violate Minn. Stat. § 325F.67.

163.    Defendants' misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that Monat's hair care products are "safe," "clinically proven," free from "toxic ingredients," that its ingredients are "naturally-based, safe, pure and sustainable," and that they produce "outstanding" results.

164.    Defendants, including its agents and distributors, also made untrue, deceptive, and misleading assertions and representations about Monat's hair care products by making and repeating the various statements about the alleged quality, safety, and efficacy of the hair care products as alleged herein.

165.    As a result of Defendants' conduct, Plaintiff and the Minnesota Subclass have suffered actual damages in that they have purchased Monat hair care products that are worth less than the price they paid and that they would not have purchased at all had they known of the potential risk associated with their use.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiff and the Minnesota Subclass.

166.    As a direct and proximate result of Defendants' violations of the FSAA, Plaintiff and the Minnesota Subclass have been injured, and that harm is likely to continue unless Defendants are enjoined from misrepresenting the quality, safety and efficacy of Monat hair care products as described herein.

167.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the FSAA.

47964

## COUNT IX
### Violation of Minnesota Prevention of Consumer Fraud Act,
### Minn. Stat. § 325F.68, *et seq.*
### (against Defendants on behalf of Plaintiff and the Minnesota Subclass)

168.   Plaintiff realleges and incorporate the allegations contained in each of the preceding paragraphs herein and further allege as follows:

169.   Plaintiff is a citizen of the State of Minnesota.

170.   Defendant is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

171.   Defendants' advertisements and representations with respect to Monat's hair care products were made in connection with the sale of the Monat hair care products to Plaintiff and the Minnesota Subclass.

172.   Defendants knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the sale of the Monat hair care products.  Specifically, Defendants falsely represented that Monat's hair care products are "safe," "clinically proven," free from "toxic ingredients," that its ingredients are "naturally-based, safe, pure and sustainable," and that they produce "outstanding" results.

173.   Defendants intended for Plaintiff and the Minnesota Subclass to rely on and accept as true these advertisements and representations in deciding whether to purchase Monat hair care products.

174.   Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers about Monat hair care products' quality, safety, and efficacy, and, by extension, the true value of the products. Plaintiff and the Minnesota Subclass relied on, and were in fact deceived by, Defendants' advertisements and representations with respect to Monat's hair care products' quality, safety, efficacy, and fitness for use in deciding to purchase them over competitors' hair care products.

47964

175.    As a result of Defendants' conduct, Plaintiff and the Minnesota Subclass have suffered actual damages in that they have purchased Monat hair care products that are worth less than the price they paid and that they would not have purchased at all had they known of the potential risk associated with their use.  There is an association between Defendants' acts and omissions as alleged herein and the damages suffered by Plaintiff and the Minnesota Subclass.

176.    As a direct and proximate result of Defendants' violations of the MPCFA, Plaintiff and the Minnesota Subclass have been injured, and that harm is likely to continue unless Defendants are enjoined from misrepresenting the quality, safety and efficacy of Monat hair care products as described herein.

177.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MPCFA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all other similarly situated individuals, demand judgment against Defendants as follows:

A.    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and 23(b)(1), or Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.    Appointment of Plaintiff as Class Representative and the undersigned as Class counsel on behalf of the Classes sought in this Complaint;

C.    Awarding Plaintiff and members of the Classes monetary damages including compensatory relief, punitive damages, and actual damages in an amount to be determined at trial;

D.    Appropriate preliminary and permanent injunctive and declaratory relief;

47964

E.      Statutory damages and penalties as provided by law;

F.      Prejudgment continuing through the date of entry of judgment in this action;

G.      Costs and fees incurred in connection with this action, including attorneys'

        fees, expert witness fees, and other costs, as provided by law; and

H.      Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 1st day of May, 2018.

> **COLSON HICKS EIDSON**
> Attorneys for the Plaintiff
> 255 Alhambra Circle, Penthouse
> Coral Gables, Florida 33134
> Telephone: (305) 476-7400
> Facsimile: (305) 476-7444
>
> **/s/ Julie Braman Kane**
> JULIE BRAMAN KANE
> Florida Bar No.: 980277
> Lindsey Lazopoulos Friedman
> Florida Bar No.: 91792
> Primary email:      julie@colson.com
>                     lindsey@colson.com
> Secondary email:  b.cancela@colson.com
>                     eservice@colson.com
>
>              AND
>
> Yvonne M. Flaherty, (#267600)
> **LOCKRIDGE GRINDAL**
> **NAUEN P.L.L.P.**
> 100 Washington Avenue South
> Suite 2200
> Minneapolis, Minnesota 55401
> Tel:    (612) 339-6900
> Email:  ymflaherty@locklaw.com
>
>              AND

47964

Daniel E. Gustafson (#202241)
Amanda M. Williams (#341691)
Raina C. Borrelli (#392127)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com
rborrelli@gustafsongluek.com

47964